UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DIANA JOINER, | Case No. 14-13388 |
| Plaintiff, | SENIOR U.S. DISTRICT JUDGE |
| v. | ARTHUR J. TARNOW |
| COUNTY OF JACKSON, ET AL., | U.S. MAGISTRATE JUDGE |
| | MONA K. MAJZOUB |
| Defendants. | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [48]**

Defendant filed a Motion for Summary Judgment [48] on January 3, 2017. Plaintiff responded on February 14, 2017 [51] and Defendants replied [53] on March 6, 2017. A hearing has held before the Court on June 6, 2017. For the reasons stated below, Defendants' Motion is **GRANTED in part**, dismissing Plaintiff's federal claims of excessive force against Defendant Lewis and constitutional violations against Defendant County of Jackson. The Court declines to exercise supplemental jurisdiction over Plaintiff's state claim of false arrest.

**FACTUAL BACKGROUND**

On September 4, 2012, Jackson County dispatch received a call from security guards at Reed Manor Apartments that there were shots fired across the street from the apartments in Jackson, Michigan. Plaintiff states that her grandson Shatai Brown, and his friend Andre Welch, were at her home that evening. [48-2 at

43-44]. Shatai went outside to take a cell phone call. Shatai was speaking loudly on his phone, and Plaintiff yelled for him to quiet down. As she came back into the house, Plaintiff heard a gunshot. Plaintiff ran outside because her grandson was there, and there had been rumors that a man was looking to shoot him because of his girlfriend. *Id*.

Plaintiff saw Shatai sitting in her truck in the parking lot. Plaintiff entered her truck and took the keys from the ignition to prevent her from leaving the area until the police arrived. Plaintiff was seated in the front seat next to Shatai, and shortly thereafter, Andre entered the truck in the back. Plaintiff asked Shatai what had occurred, and he stated that he gave Mercedes a warning shot because she was trying to damage the truck. Plaintiff states that she was aware that Shatai had a gun, and that there was a long gun in the back seat where Andre was sitting.

Plaintiff stated that she believes that about five police cars arrived on the scene. Defendant Lewis and Officers Galbreath and Lillie were at the scene. Defendant Lewis was a Jackson County Sherriff's Department officer called in for backup to City of Jackson police officers Galbreath and Lillie. The police officers requested Plaintiff, Shatai and Andre to put their hands up. Andre was told to exit the truck first. He was ordered to get out with his hands up and turn backwards. Andre got out, walked backwards, was handcuffed and placed in the back of the police car by an officer. A gun was retrieved from the person of Andre. Next,

Shatai was ordered out of the truck, and the same procedure occurred. Shatai also was found to have a gun on his person. Plaintiff states that Andre and Shaitai both followed the directions of the police officers.

Plaintiff was next called to exit the truck. Officer Galbreath testified that Plaintiff was asked to get off her phone and to extinguish her cigarette before being ordered to exit the vehicle. Plaintiff did not respond to those requests, continuing to talk on her phone and to smoke. Officer Galbreath ordered her to get out of the vehicle. When she initially exited the vehicle, she was still smoking and speaking on her cell phone. After Galbreath asked her again to get off the phone and put her cigarette out, she complied. Officer Galbreath then instructed Plaintiff to put her hands up, turn around, and walk backwards. Plaintiff testified that she was scared of walking backwards because she has a bad back.

While walking backwards, Defendant Lewis took control of the situation while Officers Galbreath and Lillie approached the car to ensure that there was no one left inside the truck that might be a danger. Defendant Lewis testified that Plaintiff pulled away from him, and took three or four steps toward the car when Defendant Lewis made initial contact with Plaintiff. It is undisputed that Plaintiff never made any threatening comments or gestures to the officers.
It is further undisputed that Plaintiff ended up falling backwards onto the ground. Plaintiff testified that she was tackled and body slammed to the ground. Defendant

testified that he gained control of Plaintiff's hands behind her back and assisted Plaintiff in walking backwards. As they were walking backwards, Plaintiff stumbled, fell and landed on her derriere, and Defendant Lewis went down as well as he assisted her from the ground. Plaintiff alleges that she sustained injuries to her knee and back as a result of the fall.

After falling onto the ground, Plaintiff was handcuffed and placed in the back of the Jackson City police department vehicle, detained as a result of her involvement in a felony investigation. The last contact that Defendant Lewis had with Plaintiff was placing her in the police car. After being placed in the police car, Plaintiff was questioned about what she knew of the gun shot, and the officers tried to learn why she was at the scene. After her identity was verified, Plaintiff was released, about ten minutes after being placed in the car. No charges were brought against Plaintiff, and she was not arrested.

## ANALYSIS

1. **EXCESSIVE FORCE**

In order to prevail on a § 1983 claim alleging excessive force, the 6th Circuit requires an objective-reasonableness standard be met, which depends on the "facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395-96 (1989)). When

determining whether an action is objectively reasonable, factors enumerated in the *Graham* decision are taken into consideration, including the "severity of the crime at issue, whether the suspect posts an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*.

Defendant alleges that he is entitled to qualified immunity, because there was no constitutional violation that a reasonable person would have understood. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendant relies on the video evidence to support this assertion. Defendant also highlights the fact that he was responding to a shots fired call, that Plaintiff had not followed orders, and that multiple weapons were found on the scene and on the person of the other two occupants of the truck. As a result, he argues, his actions were reasonable. Further, he asserts that the DVD will show that Plaintiff stumbled backwards, and that he did not impermissibly tackle Plaintiff to the ground.

The DVD footage clearly supports Defendant Lewis' testimony. There is no evidence that Plaintiff was tackled or body slammed in any way. Rather the footage shows Plaintiff stumble while walking backwards, and Defendant Lewis helping her to the ground. Therefore, summary judgment is granted as to this claim.

## 2. MONELL CLAIM

A municipal party may only be sued under § 1983 if a Plaintiff is harmed by execution of a municipal party's unconstitutional policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). To make out a showing of an illegal policy or custom, Plaintiff must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

To prevail on a failure to train or supervise theory, Plaintiff must establish that: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). The Sixth Circuit recognizes two ways to demonstrate deliberate indifference in claims of inadequate training. "One is failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction." *Id.* at 700-01 (citing *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir.1999)). "A second type of .

. . deliberate indifference is where the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id.* at 701.

In her response, Plaintiff alleges that the "training as it relates to the writing of incident reports is deficient" and that the municipality "is deliberately indifferent to ensuring that all uses of force are properly documented," effectively preventing an adequate review to ensure that the officer acted properly. Additionally, Plaintiff also alleges that there is an inadequacy of training as it relates to the use of force.

Plaintiff does not point to any evidence establishing that the training with respect to either of the claimed deficiencies was inadequate. To prevent summary judgment, there must be some genuine dispute of fact. Without any deposition or other evidence to support the claim, Plaintiff cannot prevail. *See Nallani v. Wayne Cty.*, 665 F. App'x 498, 513 (6th Cir. 2016) (deposition evidence that deputies and corporals working on the fourth floor of the jail did not receive any formal training on how to deal with psychological problems may be sufficient to establish a genuine issue of fact). Plaintiff does not present any evidence whatsoever that Defendant Jackson County failed adequately to train officers in issuing reports following physical contact, was deliberately indifferent, or, alternatively, that it had reason to foresee that harm would result from any inadequacies. Further, Plaintiff has failed to allege any facts about existing training concerning the use of

force, but rather seems to be proffering a claim under a *respondeat superior* liability theory, which is not available for § 1983 claims. *Monell*, 436 U.S. at 690. Therefore, summary judgment is granted as to the *Monell* claim against Jackson County.

3. **FALSE ARREST**

The Court has original jurisdiction over Plaintiff's § 1983 and *Monell* claims. Plaintiff also brings a state law claim of false arrest before the Court over which the Court could exercise supplemental jurisdiction. 28 U.S.C. § 1367. Supplemental jurisdiction need not be exercised over a claim ". . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a). "[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citation omitted); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). In this case, because the Court has dismissed Plaintiff's federal claims so the Court declines to exercise supplemental jurisdiction over Plaintiff's state claim of false arrest.

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [48] is **GRANTED.**

**SO ORDERED**.

Dated: September 26, 2017

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge